The next case up is Hamrick v. Partsfleet and in the Hamrick case we'll hear first from Mr. Magnus. Thank you, Your Honor. May it please the Court, Eric Magnus for the appellant's Partsfleet LLC et al. The district court erred in denying appellant's motion to compel arbitration. An application of the facts demonstrates that plaintiffs are not transportation workers for purposes of the FAA under this court's decision in Hill v. Renner Center or by applying the factors laid out by the 8th Circuit in Lenz v. Yellow Transportation. The lower court found dispositive whether the goods the drivers transported came from out of state were delivered untransformed. If the lower court was correct that this fact is dispositive, then Hill was wrongly decided. Of course, Hill was correctly decided in his binding precedent requiring reversal. Concluding that plaintiffs are transportation workers is also inconsistent with the limiting language in the statute restricting transportation workers to those similar to railroad workers or seamen and Congress's intent and purpose in adopting the limited exception to the FAA. Finally, even if the transportation worker exception applies, the district court erred by not deciding whether arbitration should be compelled pursuant to state law because the applicable state arbitration acts apply to the parties' arbitration agreements. First, comparing the facts of this case to Hill is telling. Hill was the unanimous decision in which Your Honor, Judge Carnes was on the panel, which held that Hill was not a transportation worker. Plaintiffs, in this case, were less of transportation workers than Hill was. First, two critical facts are the same. Some of the products both delivered had come from out of state, untransformed. The lower court considered this to be a difference, in fact, a dispositive difference, but it's not. If the issue of whether the products came from out of state is outcome determinative, then Hill was wrongly decided because the furniture and appliances that Hill delivered were not built in the states where Hill delivered them. Rent-A-Center is a national company, and there was no evidence in the record that the furniture and electronics were all made in Georgia, Alabama, or even in the United States. Counsel, this is Robert Luck. Is the test in Hill that was adopted from Palandino that the goods themselves that are being transported must have been in interstate commerce and not have been disassembled and then reassembled, or is the test that the worker him or herself must travel in interstate commerce? Your Honor, the latter is the test that was adopted in Hill. The former is the test that was effectively applied by the lower court, and that's precisely... Why is that not the beginning and the end? If that is the test, why is that not the beginning of the end of why this is wrong, at least as to the vast majority of the plaintiffs' collective action where they did not travel, in other words, the 99% that didn't travel interstate? Well, because, Your Honor, traveling in interstate commerce is not the only... It cannot merely be that traveling in interstate commerce makes someone a transportation worker or... Agreed. They have to have... The transportation can't be incidental, right? I have to say, just reading the record, you're going to have a tougher time convincing me, and I'm only speaking for myself, that these folks who are in the delivery business and your client is in the delivery business were not transportation workers in that sense, in the non-incidental sense, like the customer service rep in Hill and the customer service rep in Paladino. But I do think there's an issue of the interstate travel, of whether the workers themselves travel interstate as required by Hill and by Paladino. Well, that fact is certainly true, Your Honor, that Hamrick himself did not travel interstate, and the plaintiffs' group as a whole, including the opt-ins already in the case, barely traveled interstate. But Hill certainly requires that... Let me ask you this. Is the barely a problem for you? The Seventh Circuit seems to suggest that even if it's only rare, if there's some transportation interstate commerce that meets that element. How many of the opt-in plaintiffs did, at least in some part of their job with your clients, travel interstate? Some of the opt-ins did, some didn't. But I don't believe that fact is dispositive, because it cannot possibly matter whether someone that's doing the same job happens to live in, let's say, Bethesda, Maryland, when they're crossing into another state and another person lives in Macon, Georgia, where they're doing the exact same job and not delivering out of state. Those imaginary lines are significant. The fact that someone happens to live in a border town that crosses over does matter, because those state lines do matter. And I don't see how you can read our case law, at least that requirement of actually engaging the workers actually engaging interstate commerce as not being significant that someone crosses state lines. I think just focusing on the raw... This court's decision in Hill clearly states that that is not enough. One has to be similar in nature to a railroad worker or seaman, which we all know what that means. That means... Right, but counsel, as I read your independent contractor agreement, and as I read the evidence of your website, and as I read the affidavits of the plaintiffs, and your own corporate representative, you're in the delivery business. These people delivered. Their job wasn't incidental. And that's what distinguished Hill from... Or why Hill's claim was ultimately unsuccessful, that the exception applied, was because his transportation was incidental to what he did. How can you say that transportation is incidental to what the plaintiffs did? I can't, but transportation was not incidental to what Hill did. Hill's job was driving. The focus of the transportation... I don't think that's a fair reading of Hill, counsel. There, they compared what the incidental part to... There, they compared the incidental part to the Palandino, where it was just part of the job. His job included sales, included customer service, and also included delivery. In other words, that wasn't the only part of his job, and they specifically called it incidental. But Palandino is not an accurate state reflection of the current status of the law. Palandino was prior to the Supreme Court's decision in Circuit City, where Justice Kennedy made clear that the engaged in commerce language is narrower than the interstate commerce power of Congress. And engaged in commerce has to be, in the FAA exception, has to mean something. And that means that someone has to be similar in nature to a railroad worker or a seaman, which means somebody whose job it is to be engaged in interstate commerce that would affect the free flow of goods. Palandino is prior to the Supreme Court's decision in Circuit City. It has to be read in that context. Except that we specifically adopt Palandino and Hill after Circuit City. Yes. Well, this Court says Hill argued that because he did not transport goods across state lines, Palandino means that the Section 1 exemption should apply to him. But this Court's decision in Hill clearly adopts Justice Kennedy's instructions in Circuit City that the emphasis is on a class of workers in the transportation industry rather than on workers who incidentally transport goods interstate as part of their job in an industry that would otherwise be unregulated. This Court flat out said that merely transporting goods interstate as part of their job is not enough. Right, right. In other words, if part of your job is to, at one time or another, get on a truck and cross state lines, that's not enough. Absolutely. But what is enough is, if that's all that you do is transport goods, then you are a class of worker in the transportation industry, right? No, because if that were true, Your Honor, then Congress, then that is a, there is no meaning to the limiting language of railroad worker or seaman. Congress could have just said anyone that transports goods is within the scope of the transportation worker. Let me ask you, in the early days of the railroads, there was a railroad line between Jacksonville and Pensacola and didn't go any other particular place. Were those workers not in the railroad business? Clearly they were. Clearly they were, Your Honor. They were regulated. Same thing. In the old days, the only way to get from Jacksonville to Pensacola was to take a boat around the Straits of Florida from one to the other. You stayed in the state of Florida. Were you a seaman if you worked on one of those boats? Yes, Your Honor. Right. So why is a transportation worker not one that drives from Jacksonville to Pensacola to deliver goods? Because if that reading of anyone whose job it is to be in transportation renders the limiting language in Section 1 meaningless, because all Congress would have had to said is anyone that transports... Counsel, but that's why there's the additional requirement. Remember, it was a two-pronged test. Part one is, are you in the class of, in the transportation industry? You answered that. If you drive between, even if it's interstate, you're in the transportation industry like a railroader seaman. The second part of that test is, are you actually engaged in interstate commerce? Meaning, are you actually crossing state lines in doing that? And that's the part that the plaintiffs have a problem with. At least that's the sum of theirs, right? Because if you do take it from Jacksonville to Atlanta, you are a transportation worker. That is exempt. If that's your job, yes, Your Honor. But that is none of the people in this class's job, is to drive interstate commerce, interstate routes like that. These people's jobs are doing local delivery. When they have to cross state lines, the exact word you use is correct. It's incidental. That's not their job, like somebody whose job it is to drive a truck back and forth from somewhere in Florida to Atlanta. I think the problem for you is that I think Hill, as adopting Palladino, seems to suggest that that element is met where the register center once in a while has to drive from Georgia to Alabama because he lives in Columbus and is delivering to Phoenix City some furniture. And that would seem to meet that second element. And I don't see why if your clients who are driving from Tallahassee to Thomasville delivering goods don't also trigger that second element. I'm having a trouble not seeing that. Because they don't drive from Tallahassee to Thomasville. They only do local deliveries remaining. And within a market may incidentally cross state lines if you're, say, delivering from a warehouse in Bethesda, Maryland to Washington, D.C. But they don't drive those kind of routes that your honor is. If that were the facts, you're correct. But those aren't the facts. These are solely final mile local delivery drivers, some of whom are identical to the ones that Judge Berger at the lower court found were not transportation workers in the subsequent case that are contracted with medically doing deliveries of medical supplies locally. And those people are included in this class as well. So if the facts were what your honor just said, that would be correct. But they're not. That's not what any of these drivers do. Thank you, counsel. We'll hear now from Mr. Morgan. Good morning, your honors. May it please the court. Ryan Morgan from the law firm of Morgan & Morgan arguing here for the appellee Curtis Hamrick and those similarly situated. I'm going to jump right in here and pick up where Judge Luck and Mr. Magnus were discussing about the second prong of the Hill standard about whether these workers were engaged in the flow of interstate commerce. And as the district court found, they decidedly were. The district court made very specific factual findings that the goods they were transporting had been transported in interstate commerce. Counsel, that seems contrary to Hill and Palandino. I understand that there are other circuits that have held that. I understood that there's maybe snippets of language in certain opinions that could support that reading. But at least post-Circuit City, our case law seems to require that there be actually engaged, meaning that a transportation worker actually crossed state lines as engaging in that business. Not just the flow of the goods, but the workers themselves flow across state lines. Your honor, both binding Supreme Court precedent as well as tell me what binding case law from the Supreme Court says that it is the goods themselves that must flow and not the workers. Now, it may be an open question, but I'm shocked to hear that there is binding Supreme Court case law in the FAA context. What would that be? It is the Walling v. Jacksonville paper case that is cited in the- That's an FLSA case, counsel. And it's defining the term engaged in commerce, engaged in interstate commerce. But counsel, this is a different statute. So it's a completely different statute 50 years later. And more importantly, the term is not engaged in commerce. The term is workers engaged in commerce, right? The way the Supreme Court has defined it in Circuit City's stores is we held that the phrase engaged in commerce means engaged in the flow of interstate commerce. Right. But then you add the term- First of all, that wasn't the issue in front of the Circuit City Court. It was a very different issue, as you know. But second of all, what they were holding there is that engaged in commerce means something narrower than involved in commerce as used in Section 2. And that's clearly right. But they weren't, A, dispositively defining the term. And B, that also ignores the modifier to that, which is workers. And then C, Hill is post-Circuit City. So at least as far as this circuit is concerned, we've read Circuit City to re-adopt the Palantino test, which seems to require that the transportation worker themselves must move in interstate commerce. How is any of what I just said wrong? Because that you are equating that with physically crossing state lines. And likewise, it goes back to the Walling case. It goes to the Walters case, the 11th Circuit case. It goes to- Walters is a- I don't even know the name of the statute. I never heard of it before in looking it up. It's about medical equipment or medical device. It has nothing to do with the FAA and the exemption, right? No. Walters was another FLSA case defining the motor carrier exemption, which relies on the same language of being engaged in interstate commerce. But you agree it's not an FAA case. It doesn't purport to interpret Section 1, right? Not from a Circuit Court level, no. The only other cases that from a Circuit Court- The only case that binds us is Hill, right? Hill is our most recent case interpreting Circuit City, right? It is the most recent case interpreting Circuit City, yes. But it does not specifically say that you have to yourself step across a state line- Isn't that exactly what it says? Because the argument Hill made was, hey, this applies to me because I moved from Georgia to Alabama. And what we said was, yes, that means Palindino, but you also need to meet it because you have to be in the class of transportation workers. So what the court there said is that does meet one of the elements, crossing state lines. But the other element is you must be in the class of transportation industry workers. Now, I happen to think that you've met that burden clearly. But why is the second element of the actually engaging in interstate commerce, not the workers actually engaging in interstate commerce, meaning the worker moving in interstate commerce? You could also look at the American postal workers case, Your Honor, which is an 11th Circuit case. It is pre-Circuit City, but it defines as postal workers making local deliveries as in the stream and in the flow of interstate commerce and would be eligible for the Section 1 exemption. This engaged in commerce term is obviously used in several different respects throughout the law and different statutes, different areas. And it has been continuously described and held to be from the beginning of the trip to the end of the trip. Without question, the plaintiffs here are finishing that trip. They are the final mile. And Your Honor, you indicated you read the declarations from class members here in this case. We also have numerous class members from North Carolina who physically did go into South Carolina every single week. And counsel, I think as to those, you probably are right. But I think my concern, and again, I'm only speaking for myself, I think my concern is those, the vast majority of workers of the company who did not do that, who are final mile, but not nowhere near a border. And there are, I don't want to reiterate anything in our briefness, but there are, of course, numerous district court level cases that have similar groups of employees here who are traveling entirely in trust state would be covered. And I understand. I will fully concede that different circuits view this differently. Certainly the lens court, I think it's the 8th Circuit or 6th, has a way of looking at it. The 7th seems to suggest that it does require transportation back and forth. But we're bound by Hill. And I'm just trying to view Hill in any way that supports your reading. I'm looking at Palandino, for example, where it specifically describes the exception and says it includes, so it quotes the exception and includes only employees actually engaged in transportation of goods and commerce. So the employees have to actually engage in the transportation. And also discussing how no evidence that she, that her, was required to move goods in interstate commerce. In other words, that she wasn't required to move and that was the failure in Palandino. And then Hill, we reject the argument, but not because he didn't move from Alabama to Georgia, which he did, but because he wasn't an incidental worker. In other words, he wasn't in the transportation business as a customer service rep for Rent-a-Center. I just, I'm having trouble seeing how that second step is met here or how the, I'm sorry, how the district court got right its interpretation of that second step at Hill. What it comes down to, Your Honor, I think is the terminology engaged in interstate commerce. And the Palco court, the third circuit, addressed this directly in their opinion when they were, quote, had Congress intended the residual clause of the transportation worker exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly. And so it comes back to how do you define engaged in commerce? And engaged in commerce does not mean stepping across state lines. There are other cases from the 11th and the Supreme Court saying that that can include intrastate trips, part of one continuous interstate trip, which is what the district court found here that these individuals were doing, performing that final mile, last leg of an interstate trip from manufacturers all over the country and world delivering these goods. Sounds like a good en banc argument, counsel, but, you know, you're not in the third circuit, you're in the 11th, and our law is different from the third circuit's law. Yes, sir. And one last thing I will note on this issue here is looking back like at Walter's for a second and understanding that using the term engaged in commerce in a different statute, but again, the terminology we believe still is important. In that case, the court, the 11th there were engaged in commerce where only 1% of their trips actually left the state. And here, USPAC does admit people did travel interstate. They try to minimize it, of course, but it did happen. And our plaintiffs did say it happened in their declarations that we've already submitted to the court, which have been uncontroversial. How much is enough of the overall trips of an individual grubber? What percentage is enough under your view? Using Walter's, 1% is enough, according to this court. I mean, it's a very low standard of what is enough because the way Walter's was looking at it and these other courts was that even the intrastate trips still count overall as interstate commerce because it is one continuous flow. And all these other cases that are distinguishable, the identity of the grub hub and the door dash cases you have with the local delivery drivers who are only taking a new transform, new product from mom and pop pizzeria to a house, a block down the street are different. Here, this is part of how transportation works today is you have big rigs bringing it into the warehouse. You have the wheel and spoke hub model that's described on USPAC's website. You have these final mile drivers who are critical to getting the products to their intended destination without them failing. Counselor, I think you're being a little repetitive here. How much time does he have left? Your Honor, he has four minutes and 42 seconds. All right. Is there anything else you would like to address? Repetition is a valid argument, but it can also lose its effect. I think we get your point about that. Goods, this is the modern way. Everything moves in interstate commerce. Yes, I understand that. But the question is, do the workers have to move in interstate commerce in addition to the goods? And if so, how much, how often, how frequently, what percentage and so forth? Anything else, Mr. Morgan? On that issue, the only thing I would add is you do have to look at the facts of the case, and you do have to look at what is the industry in question here versus Hill, which was a rent-a-center facility. I don't think anyone with a straight face can argue a rent-a-center company who sells is a transportation delivery company. And their whole purpose for existing is to help customers and business transport their items from all over to their local customer that they are selling these items to. And so it is one continuous trip from manufacturer all the way through to the intended destination at the auto parts store or whatever the case may be. I'll turn just briefly to the second issue before the court, that the district court correctly ruled that this arbitration agreement cannot be, arbitration cannot be compelled under any sort of state arbitration code based on the express written terms of the contract. The district court analyzed the terms, the Gates versus TF final mile case, which is a supplemental authority that we filed with the court last month from Judge Story in the northern district of Georgia in a very almost identical situation as here, ruled the same way, both that the transportation worker exemption applied as well as the language of that arbitration agreement, which was virtually identical to the agreement here, only allowed arbitration to be pursued under the FAA. And because the FAA is inapplicable here, it cannot go forth under any other sort of unagreed upon rules. With that being said, your honors, we ask that the court affirm the district court's opinion. Thank you. Thank you. Ms. Maggie. Your honors, just a couple of points in rebuttal on the FAA issue, and then I'll the court's focus on that the transportation worker exception is called that for a reason. It's about the worker. The workers in this case didn't, had nothing to do with what happened with the goods prior to the time, either the worker or U.S. PAC defendants got a hold of any of these goods. Plaintiffs are, their interpretation as articulated by Mr. Morgan clearly says that effectively goods can never, if you're transporting goods, you cannot be within the scope of the transportation worker exception. He's effectively arguing, unless you're transporting food or people that's transformed locally, you cannot, you're not within the scope of the transportation worker exception. And that has to be too narrow because the limiting language identifying people who did transform goods is within the scope of the exception. On the state law issue, the lower court held that the arbitration must rise or fall in the application to the FAA because the FAA effectively preempts state arbitration acts. This is wrong for a couple of reasons. First, if the transportation worker exception applies, which is the only circumstance in which the state law argument matters, then that, then that, oh yes, sorry, can I ask you a quick question on this issue? So let's assume for the moment that I don't agree with you and I agree with the district court on the exception issue. Would I then read the sentence in the arbitration provision, the one that's at issue here, a quote that the arbitration provision is governed by the Federal Arbitration Act as unenforceable? Correct. Okay. So if that's the case, then if I turn to, this is section 19 of the contract, of the independent worker contract, in the miscellaneous section, subsection C, this is a savings clause where it says, with the exception of the arbitration provision, if any part of this agreement is declared unlawful or unenforceable, the remainder of this agreement shall remain in force in effect. So that's a general savings clause, but accepted from that savings clause is the arbitration provision. Don't I read that to mean that if any portion of it is unenforceable, then the whole thing falls apart? No, your honor. The savings clause refers to the arbitration agreement as a whole, meaning the parties clearly mutually expressed intent to arbitrate. It's the exception, not the limited FAA governed by provision. Yeah, but what the savings clause provision says without the exception part is, if any part of this agreement, any part, is declared unlawful or unenforceable, the remainder shall be in force in effect. And that's a very typical savings clause. You don't want to lose the contract because some provision is problematic. But the first clause of that is with the exception of the arbitration provision. In general, savings clause doesn't apply so that if any part of that provision is unenforceable, then the rest of it shall not remain in force in effect. How do I not read it that way? Because your honor, it doesn't say any part of the arbitration provision. It says with the exception of the arbitration provision, which is intending to cover the party's mutual intent to arbitrate as a whole, that should not be stricken from the general overall intent to arbitrate, should not be stricken from the record and severed, because there remains the governing law provision and the clear mutual intent to arbitrate that should be enforced through state law. And the fact state law can do that is readily obvious. And perhaps the best example in the briefing is Pennsylvania, where some of the drivers came from. Pennsylvania's Arbitration Act expressly applies to agreements in which the Pennsylvania Uniform Arbitration Act is not if a court does not have the authority to apply the Pennsylvania Arbitration Act. Counsel, your time has expired. Thank you, your honor. Counsel, let me ask you this. Your argument that arbitration can be enforced under state law is not properly before us. You lost on the motion for 1292B. And your argument, as I understand it is reduced to pendent appellate jurisdiction, but a SWINT pretty much precludes that. Supreme Court reversed me. This is the silver anniversary of the Supreme Court unanimously reversing me in the SWINT case. And I'm not speaking only for myself inclined to celebrate it by getting reversed again on that particular issue. Do you have any other basis for us addressing the state law arbitration issue? No, certainly the argument we made to the court about why the state arbitration state issue is before this court is based on the doctrine of pendent appellate jurisdiction, which we do think applies here. It just clearly doesn't. I mean, you don't have to decide the state law issue in the course of deciding the federal issue. The issue here about what moves in interstate commerce, what engaged in interstate commerce means has no bearing on the state law arbitration issue. Does it? I mean, am I missing something? Well, the standard is inextricably intertwined. And that means you can't decide one without deciding the other. Well, which is kind of circular, because if you can't decide one issue without deciding the state law issue, you just decide this federal issue. And then under the precedent law of the case, among other things, the state law issue will be decided. But putting that aside, inextricably means you can't separate the two. And you can certainly separate the two here by deciding the federal issue on what engaged in interstate commerce means. Viewed that way, I believe you're correct, Your Honor. But I'd view it the way of, if ultimately state law is going to apply to these agreements to arbitrate, then allowing this litigation to continue effectively means that you're rendering inextricably intertwined to be so narrow as to be meaningless. Because if you're ultimately going to have to decide the issue anyway, it's an incredible waste of resources. You don't have to decide the issue. And in Swift, the rule that the Supreme Court laid down was not efficiency. It says limitation is to be construed strictly, appellate limitation, because it affects the balance of power, division of responsibilities between district courts and courts of appeal. And here's the test we laid down. The only point I would say there is we aren't asking the court to rule state law applied. We asked the court to rule that the lower court erred in not deciding the issue and to remand. We did not ask the court to actually rule on whether state law applies. I thought you did argue that in your brief, that reply brief at 7 through 10, you argued that we have jurisdiction to decide the state law issue. Yes, we certainly argued that. The last line of our primary principle brief says, if the transportation worker exception does not apply, remanded the district court to apply the applicable state arbitration act to determine whether each plaintiff and opt-in should be compelled to individually arbitrate under the applicable state laws. So you argued we have jurisdiction to decide that, but we really shouldn't do it? No. In the alternative, we argue the inextricably intertwined standard, but you're right. They are separate arguments. All right. Thank you, counsel. We'll take that and the other cases under commission and stand in recess. Thank you, counsel. Thank you.